## TRUST AGREEMENT

THIS TRUST AGREEMENT is made and entered into this __7__ day of __August__, 2003 between STEVE PAPPAS whose mailing address is 44 87TH Avenue, Brooklyn, New York 11209 hereinafter called the Settlor, WALTER V. GERASIMOWICZ whose business address is 280 Park Avenue, Suite 3900 W, New York, New York 10017, hereinafter called the Trustee.

## WITNESSETH

Settlor is a majority shareholder in Envirokare Tech, Inc., a Nevada corporation which together with its wholly owned subsidiary Envirokare Composites Corporation, a Delaware corporation ( collectively hereinafter referred to as "Envirokare") have entered into a Merger Agreement with Thermoplastic Composite Designs, Inc. and its owners Dale Polk, Sr., and Dale Polk, Jr. (hereinafter referred to as "TCD") dated March 30, 2001. Until his resignation of even date herewith, the Settlor has been Chairman of the Board of Directors of Envirokare. To reduce possible existing controversies between Settlor and TCD and to avoid any conflict of interest or appearance of any such conflict which may arise from his relationship to Envirokare as a lender or with regard to any position he may hold in any other business, Settlor hereby creates a trust which shall become effective on the date this agreement bears.

The Trustee is eligible to act in this capacity and the existence of any other banking or client relationship between any interested party and the Trustee is disclosed in annexed Schedule A.

The Account Custodian is eligible to act in this capacity and the existence of any relationship between the Account Custodian and any interested party or the Trustee is disclosed in annexed Schedule A. The Account Custodian is not affiliated with either the Trustee or his company Meditron Asset Management, LLC.

Settlor therefore hereby delivers to the Trustee and the Trustee hereby acknowledges receipt of the property listed in annexed Schedule B, subject to the

provisions of this Trust other applicable Federal and State laws. Provided however, that the Account Custodian shall have sole signatory power over the accounts holding the assets of the trust subject to the terms and conditions of the trust.

The primary purpose of this Trust is to confer on the Trustee the sole responsibility to administer the trust and to manage trust assets without the participation by or the knowledge of any interested party. This includes the duty to decide when and to what extent the original assets are to be sold or disposed of and in what investments the proceeds of sale are to be reinvested. Accordingly the Settlor and the Trustee agree as follows:

FIRST: (A) This Trust shall terminate upon the first to occur of the following: (1) at Three years from the date of this document; (2) Settlor's death. The period between the date of this agreement and the termination of the Trust shall be called the "Trust Term".

(B) Notwithstanding Paragraph (A) of this Article FIRST, this Trust agreement may in addition be terminated through revocation in the event that Envirokare does not give notice to TCD prior to the end of the term provided for such notice in the merger agreement as amended, of its intent to proceed with the merger with TCD as referenced above. However, such revocation or any amendment of the terms of this Trust agreement shall require the prior written approval of the Board of Directors of Enviokare. Revocation of the trust pursuant to this paragraph shall be effective 90 days after the date notice is provided to the Trustee of this event, signed by the Settlor and countersigned by the Secretary of the Board of Directors of Envirokare on behalf of the Board signifying approval.

SECOND: The Trustee in the exercise of his authority and discretion to manage and control the assets of this Trust shall not consult or notify any interested party.

THIRD: (A) Each asset listed in annexed Schedule B is free of any restriction with respect to its transfer or sale, except as fully described in such Schedule B.

(B) During the Trust Term, the interested parties shall not pledge, mortgage, or otherwise encumber their interests in the property held in trust hereunder.

FOURTH: The Trustee shall not knowingly or negligently disclose to the public or to any interested party any information as to the acquisition, retention, or disposition of any particular securities or other Trust property; except as required by law and except that the Trustee shall promptly notify the Settlor and Envirokare when the holdings of any particular asset transferred to the Trust by any interested party have been completely disposed of or when the value of that asset becomes less than $1,000.

FIFTH: The income tax return of the Trust shall be prepared by the Trustee or his delegate, and such return and any information relating thereto (other than the Trust income summarized in appropriate categories necessary to complete an interested party's tax return), shall not be disclosed publicly or to any interested party. To effectuate the provisions of this Article FIFTH, the Trustee shall use its best efforts to provide the interested party promptly after the close of each taxable year of the Trust during the Trust Term with that information concerning the Trust including information on income, expenses, capital gains and capital losses, which is necessary for the interested party to prepare and file tax returns required by the laws of the United States and the laws of any State, district or political subdivision; provided however, that in no event shall the Trustee disclose publicly or to any interested party any information whatsoever which might identify the securities or other property which comprise the assets of the Trust or identify the securities or other property which have been sold from the assets of the Trust.

SIXTH: An interested party shall not receive any report on the holdings and sources of income of the Trust; except that the Trustee shall—

(A) Make quarterly reports of the aggregate market value of the assets representing such interested party's interest in the Trust,

    (B) Report the net income or loss of the Trust and make other reports necessary to enable the interested party to complete an individual tax return required by law (in accordance with Article FIFTH of this Trust), and

    (C) Provide an annual report of the aggregate amount of the Trust's income attributable to the beneficial interest in the Trust of such interested party categorized in accordance with the provisions of such section.

  SEVENTH: There shall be no direct or indirect communication between an interested party and the Trustee with respect to the Trust unless the communication is with the Trustee in writing and has the prior written approval of the Board of Directors of Envirokare and unless it relates only—

    (A) To a request for a distribution in cash or other unspecified assets of the trust,

    (B) To the general financial interest and needs of the interested party (including but not limited to a preference for current income or long-term appreciation),

    (C) To directions to the Trustee to sell all of an asset initially placed in the Trust by an interested party which in the determination of the Settlor creates a conflict of interest or the appearance thereof due to the subsequent assumption of duties by the Settlor (but any such direction is not required).

  EIGHTH: The interested parties shall not take any action to obtain and shall take appropriate action to avoid receiving, information with respect to the holdings of and the sources of income of the Trust including obtaining a copy of any Trust tax return filed by the Trustee or any information relating thereto except for the reports and information specified in Article SIXTH of this Trust.

NINTH:      The Fiduciaries shall not knowingly or negligently—

(A)   Disclose any information to any interested party with respect to this Trust that may not be disclosed pursuant to any provision of this Trust,

(B)   Acquire any holding the ownership of which is prohibited by or not in accordance with the terms of this Trust,

(C)   Solicit advice from any interested party with respect to this Trust, which solicitation is prohibited by any provision of this Trust, or

(D)   Fail to file any document required by this trust

TENTH:      The Settlor shall not knowingly or negligently—

(A)   Solicit or receive any information with respect to this Trust that may not be disclosed pursuant to any provision or requirement of this Trust, or

(B)   Fail to file any document required by law.

ELEVENTH: In addition to the rights, duties, and powers conferred upon the Trustee by law, the Trustee shall have the following powers, rights, and discretion with respect to any Trust property held by them:

(A)   To sell, exchange, or otherwise dispose of the property in such manner and upon such terms as the Fiduciaries in its sole discretion shall deem appropriate;

(B)   Except as limited by specific enumeration in this Trust agreement to invest and reinvest the principal and any undistributed income in property of any kind;

(C)   Except as limited by specific enumeration in this Trust agreement, to participate in any reorganization, consolidation, merger, or dissolution of

any corporation having stocks, bonds or other securities which may be held at any time, to receive and hold any property which may be allocated or distributed to it by reason of participation in any such reorganization, consolidation, merger, or dissolution;

(D) To exercise all conversion, subscription, voting, and other rights of whatsoever nature pertaining to any such property and to grant proxies, discretionary, or otherwise, with respect thereto;

(E) To elect, appoint, and remove directors of any corporation, the stock of which shall constitute Trust property, and to act through its nominee as a director or officer of any such corporation;

(F) Except as limited by specific enumeration in this Trust agreement, to manage, control, operate, convert, reconvert, invest, reinvest, sell, exchange, lease, mortgage, grant a security interest in, pledge, pool, or otherwise encumber and deal with the property of this Trust, for Trust purposes and in behalf of the Trust to the same extent and with the same powers that any individual would have with respect to his own property and funds;

(G) Except as limited by specific enumeration in this Trust agreement, to borrow money from any person or corporation (including the Trustee hereunder) and for the purpose of securing the payment thereof, to pledge ,mortgage, or otherwise encumber any and all such property for Trust purposes upon such terms, covenants, and conditions as they may deem proper and also to extend the time of payment of any loans or encumbrances which at any time may be encumbrances on any such property irrespective of by whom the same were made or where the obligations may or should ultimately be borne on such terms, covenants, and conditions as they may deem proper;

    (H) To register any property belonging to the Trust in the name of their nominee, or to hold the same unregistered, or in such form that title shall pass by delivery;

    (I) To abandon, settle, compromise, extend, renew, modify, adjust, or submit to arbitration in whole or in part and without the order or decree of any court any and all claims whether such claims shall increase or decrease the assets held under this Trust agreement;

    (J) To determine whether or to what extent receipts should be deemed income or principal, whether or to what extent expenditures should be charged against principal or income, and what other adjustments should be made between principal and income, provided that such adjustments shall not conflict with well-settled rules for the determination of principal and income adjustments, or the Uniform Principal and Income Act, if in effect in the State of Florida;

    (K) To determine whether or not to amortize bonds purchased at a premium;

    (L) Except to the extent otherwise expressly provided in this Trust agreement to make distributions in kind or in cash or partly in each and for such purposes to fix, insofar as legally permissible, the value of any property;

    (M) To pay such persons employed by the Trustee to assist it in the administration of the Trust, including investment counsel, accountants, and those engaged for assistance in preparation of tax returns, such sums as the Fiduciaries deem to be reasonable compensation for the services rendered by such persons. Such persons may rely upon and execute the written instructions of the Fiduciaries, and shall not be obliged to inquire into the propriety thereof;

(N) No person may be employed or consulted by the Trustee to assist it in any capacity in the administration of the Trust or the management and control of Trust assets, including investment counsel, investment advisers, accountants, and those engaged for assistance in preparation of tax returns, unless the following four conditions are met:

(1) when an interested party learns about such employment or consultation, the person must sign the Trust instrument as a party,

(2) under all the facts and circumstances, the person is determined to be independent of any interested party with respect to the trust arrangement,

(3) the person is instructed by the Trustee to make no disclosure publicly or to any interested party which might specifically identify current Trust assets or those assets which have been sold or disposed of from Trust holdings and

(4) the person is instructed by the Trustee to have no direct communication with any interested party, and that any indirect communication with an interested party shall be made only through the Trustee pursuant to this Trust;

(O) Except as specifically limited in this Trust agreement, to do all such acts, take all such proceedings, and exercise all such rights and privileges, although not otherwise specifically mentioned in this Article, relation to any such property, as if the Trustee were the absolute owner thereof, and in connection therewith to make, execute, and deliver any instruments and to enter into any covenants or agreements binding the Trust.

TWELFTH: The Trustee shall not at any time be held liable for any action taken or not taken or for any loss or depreciation of the value of any property held in the Trust whether due to an error of judgment or otherwise where the Fiduciaries has

exercised good faith and ordinary diligence in the exercise of its duties such as would have been exercised by a prudent man.

THIRTEENTH:    No Trustee hereunder shall be required, in any jurisdiction, to furnish any bond or other security, or to obtain the approval of any court before applying, distributing, selling, or otherwise dealing with property.

FOURTEENTH:    Except as provided hereinabove, the Trustee shall make no accounting to the Settlor until the date of termination of this Trust, and at such time it shall be required to make full and proper accounting and turn over to the Settlor all assets of the Trust then held by them the said Trustee.

FIFTHEENTH:    The Trustee shall be compensated in accordance with the table in the annexed Schedule C or as provided for by the laws of the State of Florida.

SIXTEENTH:    The Trustee (and any substitute or successor) shall have the right, by a duly acknowledged instrument delivered to the Settlor to resign as Trustee in which event the Settlor shall designate and appoint substitute or successor Trustee (subject to the prior written approval of the Board of Directors of Envirokare) in his place and stead, which shall have all of the rights, powers, discretions, and duties conferred or imposed hereunder upon the original Trustee.

SEVENTEENTH:    Any amendment of the terms of this Trust Agreement, including the appointment of a substitute or successor Trustee, shall require the prior written approval of the Board of Directors of Envirokare, upon a showing of necessity and appropriateness. Any such substitute or successor Trustee shall have all of the rights, powers, discretions, and duties conferred or imposed hereunder upon the original Trustee.

The term "interested party" as used in this Trust means the Settlor, his spouse, any minor or dependent child, and their representatives.

The validity, construction, and administration of this Trust shall be governed by the laws of the State of Florida. Dated this 30th day of July, 2003.

Acknowledged and Agreed to on the date first written above:

SETTLOR:

_____
Steve Pappas

This Trust Agreement acknowledge before me a Notary Public, State of New York, on this 7 day of August, 2003, by Steve Pappas, who is personally known to me or presented _____ as identification.

_____   (SEAL)
Notary Public
My commission expires:

ANTHONY G. CAPOZZI
Notary Public, State of New York
No 02CA4970162
Qualified in Nassau County
Commission Expires August 6, 2006

The above Trust is accepted this 22nd day of August, 2003.

TRUSTEE

_____
Walter V. Gerasimowicz

This Trust Agreement acknowledge before me a Notary Public, State of New York, on this 22 day of August, 2003, by Walter V. Gerasimowicz, who is personally known to me or presented _____ as identification.


_Jennifer A Cuneo_
Notary Public
My commission expires: 4/12/07

(SEAL)

**JENNIFER A. CUNEO**
Notary Public, State of New York
No. 01CU6023153
Qualified in New York County
Commission Expires April 12, 20_07_

**TRUST AGREEMENT**
**STEVE PAPPAS, Settlor**
**WALTER GERASIMOWICZ, Trustee**

**SCHEDULE "A"**

None exist at the time of the signing of this Trust Agreement.

## TRUST AGREEMENT
## STEVE PAPPAS, Settlor
## WALTER GERASIMOWICZ, Trustee

### SCHEDULE "B"

8,933,400 shares of common stock of Envirokare Tech, Inc. (ENVK). These share have not been registered under the Securities Act of 1933, however they have been held by the Settlor for a period of time that would allow sale pursuant to terms and conditions of Rule 144 of the Securities Act of 1933. Such sales may be limited however based upon position that the Settlor holds with Envirokare Tech, Inc. as a Director.

## TRUST AGREEMENT
## STEVE PAPPAS, Settlor
## WALTER GERASIMOWICZ, Trustee

## SCHEDULE "C"

Please see Advisory Agreement attached to this Schedule.